Filed 2/27/15

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SECURITAS SECURITY SERVICES USA, INC., | D066873 |
| Petitioner, | (San Diego County Super. Ct. No. 37-2013-00080841-CU-OE-CTL) |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent, | |
| DENISE EDWARDS, | |
| Real Party in Interest. | |

Petition for writ of mandate from an order of the Superior Court of San Diego

County, Judith F. Hayes, Judge. Petition granted in part with directions.

Tharpe & Howell and Sherry B. Shavitt, Jennifer S. McGeorge; Littler Mendelson

and Henry Lederman for Petitioner.

Blumenthal, Nordrehaug & Bhowmik and Norman B. Blumenthal, Kyle R.

Nordrehaug; Mark A. Osman for Real Party in Interest.

Securitas Security Services USA, Inc. (Securitas) petitions for a writ of mandate and/or prohibition challenging the superior court's order granting its amended motion to compel arbitration in which the court ordered the parties to arbitrate all of real party in interest Denise Edwards's claims, including her class action and representative claims under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, §§ 2698 et seq.). Securitas contends the court impermissibly rewrote the parties' written dispute resolution agreement, which contained an express waiver of class, collective or representative claims; it argues the parties did not mutually agree to arbitrate class and/or representative claims and the agreement should have been deemed silent on arbitration of any class or representative action. It further contends the court erred by refusing to enforce the lawful class action waiver, as well as the PAGA waiver, because as to the latter, Edwards's waiver was voluntary, rendering the circumstances unlike those in *Iskanian v. CLS Transportation* (2014) 59 Cal.4th 348 (*Iskanian*), certiorari denied *sub nom. CLS Transportation Los Angeles v. Iskanian* (Jan. 20, 2015, No. 14-341) 2015 WL 231976. Securitas argues that because *Iskanian* does not apply, the parties' arbitration agreement should be enforced in its entirety as to Edwards's individual claims.

We conclude the trial court correctly ruled that *Iskanian* rendered the PAGA waiver within the parties' dispute resolution agreement unenforceable. However, the court then erred by invalidating and severing the waiver provision, including an enforceable class action waiver, from the agreement and sending Edwards's entire complaint, including her class action and PAGA claims, to arbitration. Under the plain language of the parties' agreement, in the event Edwards sought to arbitrate a PAGA

2

claim, her PAGA waiver (or any other waiver of the right to bring a dispute as a class or collectively) was not severable from the remainder of the agreement, thus rendering the entire dispute resolution agreement unenforceable and precluding the court from requiring the parties to arbitrate their disputes. Though we grant Securitas's petition to the extent it seeks to set aside the order compelling Edwards's class and PAGA claims to arbitration, we deny the remainder of its requested relief, and based on our de novo interpretation of the parties' agreement, direct the trial court to enter a new order denying Securitas's amended motion to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

Securitas provides specialized security services throughout the United States. In June 2011, Edwards, a Securitas employee, signed an acknowledgment of receipt of Securitas's dispute resolution agreement, which was eventually placed in her personnel file. Though the dispute resolution agreement gives employees 30 days to opt out of the agreement,[1] Edwards did not.

---

[1]      Paragraph No. 8 of the dispute resolution agreement provides: "You may not wish to be subject to this Agreement. If so, you may opt-out of this Agreement. If you wish to opt-out, you must call the following toll free number . . . in order to opt-out. In order to be effective, you must call the toll free number and opt-out within 30 days of your receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement."

The dispute resolution agreement provides in part: "This Agreement applies to any dispute arising out of or related to Employee's employment with Securitas . . . . Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore **this Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial**. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement. The Agreement also applies, without limitation, to disputes regarding the employment relationship, any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, uniform maintenance, training, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non–Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims (excluding workers compensation, state disability insurance and unemployment insurance claims)."

Paragraph No. 4 of the dispute resolution agreement further provides in part: "**[T]here will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective or representative action ('Class Action Waiver')**. Notwithstanding any other clause in this Agreement, the preceding sentence shall not be

4

severable from this Agreement in any case in which the dispute to be arbitrated is brought as a class, collective or representative action. . . . Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator."

Finally, the dispute resolution agreement contains the following severability clause in paragraph No. 10: "In the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver is deemed to be unenforceable, [Securitas] and [Edwards] agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration."

In 2013, Edwards sued Securitas in the San Diego Superior Court, and eventually filed a first amended class action complaint alleging Securitas failed to provide all legally required meal and rest breaks to employees and failed to itemize missed meal breaks on wage statements. She sought restitution and injunctive relief under the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.), damages (Lab. Code, § 226), and a representative claim for civil penalties under the PAGA.

Securitas moved to compel arbitration and stay proceedings first in February 2014, and then via an amended motion filed in August 2014, addressing the California Supreme Court's opinion in *Iskanian*, *supra*, 59 Cal.4th 348. It asked the trial court to (1) compel Edwards to arbitrate her individual claims; (2) dismiss and/or sever and stay her class claims, and (3) dismiss and/or stay her PAGA claim. Alternatively, it asked the court to

5

sever and stay Edwards's PAGA claim under Code of Civil Procedure section 1281.2. Securitas argued that the Federal Arbitration Act (9 U.S.C. § 2 (FAA)) required enforcement of Edwards's voluntary agreement to arbitrate her claims on an individual basis, and that the dispute resolution agreement required her class and PAGA claims be dismissed. It argued that *Iskanian* held agreements containing class action waivers were enforceable, and that Edwards's PAGA claim was an individual claim because *Iskanian* did not apply to voluntary agreements to arbitrate PAGA claims individually. It maintained that because Edwards was not compelled to agree to the dispute resolution agreement but voluntarily did so by not opting out, *Iskanian* did not govern, requiring enforcement of the dispute resolution agreement in its entirety. Securitas further challenged *Iskanian*'s reasoning and viability under other United States Supreme Court precedent and federal preemptive rules.

Edwards opposed the motion. She pointed out that in the absence of the PAGA waiver, she would not contest the enforceability of the class action waiver. As to her right to bring a representative PAGA claim, she argued that notwithstanding the dispute resolution agreement's opt out provision, her right was unwaivable and the PAGA waiver contrary to public policy under *Iskanian*, *supra*, 59 Cal.4th 348, which held prospective, predispute PAGA waivers unenforceable. She asserted that because the dispute resolution agreement prohibited severance of the PAGA waiver, California contract law rendered the entire agreement illegal and unenforceable, and that the forum for her claims was the superior court.

In reply, Securitas argued in part that the dispute resolution agreement did not prohibit the court from severing and staying Edwards's PAGA claim; that a complete reading of the dispute resolution agreement, particularly the class action waiver provision of paragraph No. 4 with the severability provision of paragraph No. 10, made clear that the parties did not agree to *arbitrate* a PAGA claim, and it was this concept that could not be severed. According to Securitas, if the PAGA waiver was invalid or unenforceable, the proper forum for Edwards's PAGA claim was in court, and it asked for the PAGA claim to be severed and stayed during arbitration of Edwards's individual claims.

After hearing arguments on the matter, the court granted Securitas's motion to compel arbitration. It found "the parties entered into a valid and binding arbitration agreement and there is no contractual basis to revoke the agreement." It also found the agreement was "neither procedurally nor substantively unconscionable." However, it ruled Edwards's PAGA claim could not be waived, and that because paragraph No. 4's class action waiver provision sought to eliminate or abridge Edwards's right to litigate her PAGA claim, the provision was invalid. It further ruled that because the PAGA waiver was unenforceable as a matter of California law, the severability clause (paragraph No. 10) of the dispute resolution agreement applied. It ordered the parties to proceed with arbitration as to Edwards's entire complaint, including her PAGA claims, observing that Edwards had elected to resolve her PAGA claims in arbitration along with her class claims.

Securitas filed this petition for peremptory writ of mandate, prohibition or review seeking an immediate stay and (1) compelling the trial court to set aside the portion of its

7

order sending Edwards's class action and PAGA claims to arbitration; (2) compelling the court to issue a new order enforcing the dispute resolution agreement's class action and/or PAGA waivers or alternatively sever those claims and stay them pending arbitration of Edwards's individual claims. We issued an order to show cause, stayed the trial court's order and the parties' arbitration, and deemed, absent objection, Edwards's informal response a return to the petition. Though neither party objected to that procedure, Edwards subsequently filed a formal return to the petition, and Securitas filed a reply.[2]

## DISCUSSION

### I. *Standard of Review*

Code of Civil Procedure section 1281.2, governing petitions to compel arbitration, provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it

---

[2]	In a footnote to its reply, Securitas asks us to strike Edwards's December 18, 2014 return on grounds she did not seek permission to file it and her counsel did not sign the required verification. We note the return includes Edwards's answer and a verification, though it is unsigned. It is true that an unverified return does not constitute a demurrer to a mandate petition and therefore should be stricken for purposes of addressing the petition's merit. (*Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1287.) Securitas replied on the merits, however, so we will consider the arguments made in Edwards's return to the extent they were made in the trial court below and respond to Securitas's petition. We deem new facts and arguments made in the return forfeited. (See *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264-265 [constitutional or other rights may be forfeited by failing to make a timely assertion of the right before a tribunal having jurisdiction to determine it]; *City of Glendale v. Marcus Cable Associates, LLC* (2014) 231 Cal.App.4th 1359, 1379.)

determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the revocation of the agreement." In such a petition, the party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) The party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense, including that an arbitration provision is invalid or otherwise unenforceable. (*Ibid.*)

"When 'the language of an arbitration provision is not in dispute, the trial court's decision as to arbitrability is subject to de novo review.' [Citation.] Thus, in cases where 'no conflicting extrinsic evidence is introduced to aid the interpretation of an agreement to arbitrate, the Court of Appeal reviews de novo a trial court's ruling on a petition to compel arbitration.' " (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707; see also *Rebolledo v. Tilly's, Inc.* (2014) 228 Cal.App.4th 900, 912 [where ruling on petition did not hinge on credibility of extrinsic evidence and was based on legal interpretation of arbitration agreement, review was de novo].) Because the parties did not present contradictory evidence on the meaning of the dispute resolution agreement, we exercise independent review of the amended motion to compel arbitration and the superior court's ruling.

## II. *Iskanian*

Resolution of the issues presented in this writ in part depends on an understanding of the California Supreme Court's recent decision in *Iskanian*, so we discuss it in some

9

detail.  In *Iskanian*, an employee signed an agreement with his employer providing for binding arbitration of any and all claims arising out of his employment.  (*Iskanian*, *supra*, 59 Cal.4th at p. 360.)  The agreement contained a provision stating they agreed "each will not assert class action or representative action claims against the other in arbitration or otherwise . . . ."  (*Iskanian*, at pp. 360-361.)

The employee sued the employer, and after some maneuverings in the courts during which the California Supreme Court decided *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*),[3] the employee filed a first amended complaint alleging Labor Code violations and violations of the UCL.  He asserted those claims as an individual, a putative class representative seeking damages, and in a representative capacity under PAGA.  (*Iskanian*, *supra*, 59 Cal.4th at p. 361.)  After the U.S. Supreme Court decided *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740] (*Concepcion*)[4]

---

[3]    In *Gentry*, *supra*, 42 Cal.4th 443, the court held that prohibiting classwide relief "in some cases . . . would undermine the vindication of the employees' unwaivable statutory rights and would pose a serious obstacle to the enforcement of the state's overtime laws," and thus would be unenforceable.  (*Id*. at p. 450.)  *Gentry* established a case-specific four-factor test for courts to use in determining whether to decline to enforce a class action waiver in an arbitration agreement in favor of allowing class arbitration.  Under *Gentry*, if the court concluded, based on those factors, "that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, it must invalidate the class arbitration waiver to ensure that these employees can 'vindicate [their] unwaivable rights in an arbitration forum.' "  (*Id*. at p. 463.)

[4]    In *Concepcion*, the U.S. Supreme Court held that "class arbitration, to the extent it is manufactured by *Discover Bank* [*v. Superior Court* (2005) 36 Cal.4th 148] rather than consensual, is inconsistent with the FAA."  (*Concepcion*, *supra*, 563 U.S. ___ [1331 S.Ct.

10

the employer moved to compel arbitration and dismiss the class claims, arguing

*Concepcion* had invalidated *Gentry*. (*Iskanian*, at p. 361.) The trial court granted the

motion, ordering the individual claims to arbitration and dismissing the class claims with

prejudice. (*Ibid*.) The appellate court affirmed. (*Ibid*.)

The California Supreme Court addressed, among other things, whether the FAA

preempted a state's refusal to enforce a provision in an arbitration agreement waiving the

right to class action proceedings, and the viability of its holding in *Gentry*. (*Iskanian*,

*supra*, 59 Cal.4th at p. 359.) It held that under *Concepcion*, the FAA preempted *Gentry*'s

rule, which had invalidated class waivers where "a class arbitration is likely to be a

significantly more effective practical means of vindicating the rights of the affected

employees than individual litigation or arbitration." (*Iskanian*, 59 Cal.4th at pp. 362,

366.) Under *Concepcion*, state law rules against class action waivers, even if they have

an exculpatory effect, are invalid because requiring the parties to engage in class

arbitration or litigation after they had agreed to individual arbitration would interfere with

the fundamental attributes of arbitration as a streamlined, efficient and less expensive

dispute resolution mechanism. (*Iskanian*, at pp. 362-364.) Even where a class arbitration

would be a more effective or practical means of vindicating the employee's rights, a state

law rule against class action waivers "would still be preempted because states cannot

at p. 1751].) Under *Discover Bank*, a class action waiver in a consumer contract of
adhesion was unconscionable and unenforceable "in a setting in which disputes between
the contracting parties predictably involve small amounts of damages, and when it is
alleged that the party with the superior bargaining power has carried out a scheme
to deliberately cheat large numbers of consumers out of individually small sums of
money . . . ." (*Discover Bank*, 36 Cal.4th at pp. 162-163.)

require a procedure that interferes with fundamental attributes of arbitration 'even if it is desirable for unrelated reasons.' " (*Id*. at p. 364, quoting *Concepcion*, *supra*, 563 U.S. at p. ___ [133 S.Ct. at p. 1753].)

*Iskanian* then turned to whether an employee's waiver of his or her right to bring a representative claim under the PAGA (which we refer to generally as a PAGA waiver) was permissible under California law, and if not, whether the FAA preempted a state law rule prohibiting such waivers. (*Iskanian*, *supra*, 59 Cal.4th at pp. 378, 372.) On that question, it held an employee's right to bring a PAGA claim was "unwaivable." (*Id*. at p. 383.) The court announced its holding as follows: "As explained below, we conclude that an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy." (*Id*. at p. 359.)

The court explained that by enacting the PAGA, the Legislature declared that it was "in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." Thus, under the PAGA, " 'an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. [Citation.] Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency [Agency], leaving the remaining 25 percent for the "aggrieved employees." ' " (*Iskanian*, *supra*, 59 Cal.4th at pp. 379-380.) It summarized the Labor Code's prefiling notice requirements that the aggrieved employee

12

"describe facts and theories supporting the violation." (*Id*. at p. 380.) It pointed out the Labor Code permitted an employee to commence a civil action only after the Agency either decides not to investigate or issues a citation, or fails to do so within specified periods of time. (*Ibid*.) Thus, *Iskanian* held, an aggrieved employee's PAGA action for civil penalties is a type of qui tam action; it functions as a substitute for an action brought by the government itself, the government is always the real party in interest, and a judgment thus binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government. (*Id*. at pp. 381-382.)

In view of the nature of a PAGA claim, the court held: "[W]here, as here, an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." (*Iskanian*, *supra*, 59 Cal.4th at p. 384.) It reasoned such an agreement would contravene two statutes undergirding the unwaivability of statutory rights, Civil Code sections 1668 and 3513,[5] which are themselves derived from public policy. (*Iskanian*, 59 Cal.4th at p. 382.) Because the Legislature's purpose in enacting the PAGA was to empower employees to enforce the Labor Code as agency representatives, a PAGA waiver disabled that mechanism, and thus had as its " 'object, . . . indirectly, to exempt [the employer] from

---

[5]     Civil Code section 1668 states: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Civil Code section 3513 states: "Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."

13

responsibility for [its] own . . . violation of law . . . .' " (*Iskanian*, at p. 383.) Such an agreement also violated Civil Code section 3513 in that "agreements requiring the waiver of PAGA rights would harm the state's interests in enforcing the Labor Code and in receiving the proceeds of civil penalties used to deter violations." (*Iskanian*, at p. 383.) The court continued: "Of course, employees are free to choose whether or not to bring PAGA actions when they are aware of Labor Code violations. (See *Armendariz* [*v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83,] 103, fn. 8 [waivers freely made after a dispute has arisen are not necessarily contrary to public policy].)[6] But it is contrary to public policy for an employment agreement to eliminate this choice altogether by requiring employees to waive the right to bring a PAGA action before any dispute arises." (*Iskanian*, 59 Cal.4th at p. 383.)

Finally, *Iskanian* observed the rule against PAGA waivers did not frustrate the FAA's objectives because the FAA's aim was to ensure an efficient forum for resolution

---

[6]      *Armendariz* looked to the District of Columbia Circuit's decision in *Cole v. Burns Intern. Security Services* (D.C. Cir. 1997) 105 F.3d 1465 to determine whether arbitration was considered an adequate forum for securing an employee's rights under FEHA. (*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at p. 101.) The footnote cited by *Iskanian* reads: "We emphasize at the outset that our general endorsement of the *Cole* requirements occurs in the particular context of mandatory employment arbitration agreements, in order to ensure that such agreements are not used as a means of effectively curtailing an employee's FEHA rights. *These requirements would generally not apply in situations in which an employer and an employee knowingly and voluntarily enter into an arbitration agreement after a dispute has arisen. In those cases, employees are free to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights.* Absent *such freely negotiated* agreements, it is for the courts to ensure that the arbitration forum imposed on an employee is sufficient to vindicate his or her rights under the FEHA." (*Armendariz*, 24 Cal.4th at p. 103, fn. 8, italics added.)

of private disputes, unlike a PAGA action, which constitutes a dispute between an employer and the state Agency. (*Iskanian*, *supra*, 59 Cal.4th at p. 384.) "[A] PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the . . . Agency or aggrieved employees—that the employer has violated the Labor Code." (*Iskanian*, at pp. 386-387.) "There is no indication that the FAA was intended to govern disputes between the government in its law enforcement capacity and private individuals." (*Id*. at p. 385.) The court concluded: "Our FAA holding applies specifically to a state law rule barring *predispute waiver* of an employee's right to bring an action that can only be brought by the state or its representatives, where any resulting judgment is binding on the state and any monetary penalties largely go to state coffers." (*Id*. at p. 388, italics added.) *Iskanian* held that the employer could not compel the waiver of the employee's representative PAGA claim but that the agreement was otherwise enforceable according to its terms. (*Id*. at p. 391.)

On January 20, 2015, the United States Supreme Court denied the petition for certiorari filed in *CLS Transportation v. Iskanian* (Jan. 20, 2015, No. 14-341) 2015 WL 231976.

III. *Iskanian Validates the Class Action Waiver But Renders the PAGA Waiver*

*Unenforceable*

We begin with the parties' arguments concerning *Iskanian* and the enforceability of the dispute resolution agreement's class action and PAGA waiver. Securitas contends

15

the superior court erred by refusing to enforce the class action waiver; that both *Iskanian* and *Concepcion* required it to conclude it was valid and enforceable, preventing Edwards from proceeding in any forum with her class claims. It further contends the trial court erred by refusing to enforce the PAGA waiver under *Iskanian*, because in its view, *Iskanian* only invalidates PAGA waivers within a mandatory agreement, that is, one "requiring" the employee to give up his or her right to bring a PAGA action as "condition of employment." (See *Iskanian*, *supra*, 59 Cal.4th at p. 360.) Securitas maintains that because Edwards had the express right to opt out of the agreement and did not do so, she voluntarily consented to the dispute resolution agreement and its PAGA waiver. It argues this point was decided by the Ninth Circuit in *Johnmohammadi v. Bloomingdales, Inc.* (9th Cir. 2014) 755 F.3d 1072, and urges us to follow that decision.

Edwards does not dispute Securitas's arguments as to her ability to waive the right to bring class action claims. As to the validity of her PAGA waiver, however, she argues *Iskanian* is conclusive under these circumstances; that *Iskanian* holds that any prospective waiver of a party's right to bring a representative PAGA action—a waiver that occurs "before any dispute arises"—is against public policy and may not be enforced. In her return, Edwards points out that the statutes underlying *Iskanian*'s reasoning, Civil Code sections 1668 and 3513, do not exempt contracts that are entered into voluntarily.

*Iskanian* does not involve an agreement with an opt out provision, and thus does not squarely address the question. Indeed, nothing in *Iskanian* details the circumstances under which the plaintiff entered into this agreement. (*Iskanian*, *supra*, 59 Cal.4th at p. 360 [simply stating that "[i]n December 2004, Iskanian signed a 'Proprietary Information

16

and Arbitration Policy/Agreement' . . . ."].) That the agreement in that case "compel[led] the waiver of representative claims under the PAGA" (*id.* at p. 384) says nothing about whether the plaintiff's agreement was entirely voluntary or was a condition precedent to his employment. Nevertheless, applying *Iskanian*'s principles, we cannot hold that Edwards entered into an enforceable waiver of her right to bring a PAGA action by merely "opting in" to the arbitration agreement, i.e., by signing an acknowledgment of receipt and not telephoning the designated phone number to opt out within the designated period of time. Rather, as we explain, *Iskanian* compels us to conclude that the agreement's PAGA waiver violates public policy, notwithstanding the fact that Edwards was not required or compelled to enter into it as a condition of employment.

*Iskanian* broadly stated the question before it: "[W]hether an employee's right to being a PAGA action is waivable." (*Iskanian*, *supra*, 59 Cal.4th 382.) The court's answer is equally broad: that "an employee's right to bring a PAGA action is unwaivable." (*Id*. at p. 383.) And *Iskanian*'s underlying public policy rationale—that a PAGA waiver circumvents the Legislature's intent to empower employees to enforce the Labor Code as agency representatives and harms the state's interest in enforcing the Labor Code—does not turn on how the employer and employee entered into the agreement, or the mandatory or voluntary nature of the employee's initial consent to the agreement. A PAGA claim provides a remedy inuring to the state and the public, and the law, as *Iskanian* explains, broadly precludes private agreements to waive such public rights. (*Iskanian*, at p. 383; Civ. Code, §§ 1668, 3513.) *Iskanian* repeatedly states that public policy would be contravened where an agreement required an employee to waive

17

his or her PAGA rights *predispute*—"before any dispute arises." (*Iskanian*, at p. 383.) *Iskanian*, however, does not preclude the possibility of a valid PAGA waiver; it suggests by its reference to footnote 8 in *Armendariz* that a valid PAGA waiver may occur where "an employer and an employee knowingly and voluntarily enter into an arbitration agreement *after a dispute has arisen.*" (*Iskanian*, *supra*, 59 Cal.4th at p. 383, citing *Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th 103, fn. 8.) In the cited note in *Armendariz*, the court explained that "[i]n those cases," i.e., when an employee is faced with a dispute with his or her employer, "employees *are free to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights.*" (*Armendariz*, at p. 103, fn. 8, italics added.) *Armendariz*'s observation is consistent with the general rule that "[w]aivers of . . . statutory rights must be voluntary [citations] and 'knowing, intelligent acts *done with sufficient awareness of the relevant circumstances and likely consequences.*' " (*In re Hannie* (1970) 3 Cal.3d 520, 526-527, italics added.) We decline to conclude that Edwards's mere opportunity to opt out of the dispute resolution agreement or obtain counsel's advice on it at the inception of her employment and before any dispute arose, without more evidence of her knowledge, gave her a sufficient understanding of the relevant circumstances and likely consequences of forgoing her right to bring a PAGA representative action. Thus, we hold that on this record, Edwards's opportunity to opt out of the agreement did not take this case outside of *Iskanian*.

The significance of Edwards's decision not to opt out was that it manifested her acceptance of the dispute resolution agreement's benefits, consistent with the trial court's

18

ruling that the agreement was validly entered into and binding on the parties. That was the point of the Ninth Circuit's decision on which Securitas urges us to rely, *Johnmohammadi v. Bloomingdales, Inc.*, *supra*, 755 F.3d at p. 1074 ["By not opting out within the 30-day period, [the plaintiff] became bound by the terms of the arbitration agreement"]. In *Johnmohammadi*, the sole question on review was whether a provision forbidding arbitration on a class-wide basis was unenforceable under federal law, including the National Labor Relations Act (NLRA), under which the plaintiff was required to show Bloomingdales interfered with, restrained, or coerced her in the exercise of her right to file a class action. (*Id*. at p. 1075.) The court held Bloomingdales did not coerce the plaintiff into waiving her rights to file a class action as it gave her the option to opt out, and thus it was enforceable according to its terms. (*Id*. at p. 1077.) *Johnmohammadi* did not address an agreement including a waiver of PAGA claims, it does not discuss *Iskanian*, and it otherwise does not convince us to change the conclusion we have reached.

The fact Edwards was given an opportunity to opt out of the agreement also may be an indication that the dispute resolution agreement was not an adhesion contract; that it was free from procedural unconscionability. (See *Conception*, *supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1746] [under 9 U.S.C. § 2 arbitration agreements may be invalidated by generally applicable contract defenses such as unconscionability]; *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704.) But neither party raises these questions or challenges the court's rulings on them. Those matters— whether an agreement has been validly formed, and whether its terms are adhesive or

19

unconscionable—are different from the determination of whether Edwards entered into a knowing and intelligent waiver of her right to bring a PAGA claim, notwithstanding she agreed to arbitrate disputes at the inception of her employment before any dispute had arisen, or whether *Iskanian* compels a conclusion that such a waiver is unenforceable as against public policy.

IV.  *The Dispute Resolution Agreement Precludes Severance of the Unenforceable PAGA Waiver, Rendering the Entire Agreement Unenforceable*

The consequence of *Iskanian*, *supra*, 59 Cal.4th 348, is that the dispute resolution agreement's PAGA waiver is unenforceable, while Edwards's waiver of her right to bring class action claims, which is contained in the same sentence in the dispute resolution agreement, is valid and enforceable.  On these points, the trial court ruled:  "[Edwards's] representative claims under PAGA cannot be waived. . . .  Inasmuch as the 'Class Action Waiver' contained in the dispute resolution agreement seeks to eliminate or abridge Plaintiff's right to litigate PAGA claims in a representative capacity, the Court finds the waiver to be invalid.  [¶]  Accordingly, since the waiver is unenforceable as a matter of California law, paragraph [No.] 10 of the dispute resolution agreement applies.  [¶]  The parties are ordered to proceed with arbitration as to plaintiff's entire complaint, including her PAGA claims.  Based on plaintiff's counsel's representation at oral argument, plaintiff elects to resolve the representative PAGA claims in arbitration along with her remaining class action causes of action.  [¶]  The matter is stayed pending arbitration."  Thus, though the court found paragraph No. 4's waiver provision invalid, it applied the

severability clause to enforce the remainder of the agreement and ordered Edwards's "entire complaint," including class and PAGA claims, to be resolved by arbitration.

Having concluded under *Iskanian* that the PAGA waiver within the dispute resolution agreement is not enforceable and upholding the court's ruling on that point, we must decide whether the court correctly severed the class action waiver and enforced the remainder of the agreement. Securitas argued below that the dispute resolution agreement allowed severance of Edwards's PAGA claim; that the bar against severability in the dispute resolution agreement applied only to the notion that the parties had not agreed to *arbitrate* a PAGA claim. Edwards argued to the contrary: that the inability to sever the PAGA waiver rendered the entire agreement unenforceable. The court's ruling as to severability therefore came at the parties' invitation. To the extent the court's action contradicted the dispute resolution agreement's provision that disputes "relating to [its] interpretation or application" were to be arbitrated, the parties invited the error. (See *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [doctrine of invited error rests on the principle that " '[w]here a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal"].)

We reject Securitas's contention that the severability question is outside the scope of its writ, and that we should disregard Edwards's arguments because Edwards did not herself seek writ review of the trial court's order on that point or file a cross-petition.[7]

---

[7]    Securitas relies on *County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, which in turn relies on this court's decision in *Campbell v. Superior Court* (2005) 132 Cal.App.4th 904.) In *Campbell*, this court considering a petition for writ of mandate

21

Securitas's writ petition challenges the court's order compelling the entire action to arbitration, which necessarily encompassed whether the contract prohibited, required or permitted severance of the class action waiver.  And, the question, which as we have pointed out was fully briefed in the trial court, is one of contract interpretation, an issue of law that an appellate court may address even for the first time on our review.  (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24; see also *Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell* (1999) 76 Cal.App.4th 227, 229 (*Larkin* ) [where scope of arbitration clause based solely on construction of unambiguous contractual terms, review is de novo].)  We do so here.

The parties' contractual intent is paramount in deciding the outcome of Securitas's motion to compel arbitration and this writ proceeding, for the "overarching principle [is] that arbitration is a matter of contract" and "courts must 'rigorously enforce' arbitration agreements according to their terms."  (*American Express Co. v. Italian Colors Restaurant* (2013) ___ U.S. ___ [133 S.Ct. 2304, 2309]; see also *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 57 ["[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties."];

---

held that the real party in interest in that case, who had successfully moved to expunge a lis pendens in the trial court but was denied attorney fees and costs, could not raise any issue as to the court's attorney fees and costs order where she did not seek review of its decision on that question.  (*Id*. at p. 922.)  Citing *Transworld Systems, Inc. v. County of Sonoma* (2000) 78 Cal.App.4th 713, 716, fn. 4, involving an appeal from a summary judgment, this court stated the real party "may not obtain review of this determination by way of her response to [petitioner's] writ petition."  (*Campbell*, at p. 922.)  *Campbell* is properly understood to preclude the real party in interest from raising entirely *new* issues not encompassed within the order challenged by the petitioner.  *Campbell* does not preclude us from considering the parties' arguments as to severance which are legal questions fully briefed in the superior court below.

22

*Rebolledo v. Tilly's, Inc.*, *supra*, 228 Cal.App.4th at pp. 912-913 [right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract, and there is no public policy favoring arbitration of disputes the parties have not agreed to arbitrate].)

Here, the relevant contract language, which the superior court did not address, is the nonseverability clause within paragraph No. 4.  Immediately after the class action waiver, this clause provides:  "Notwithstanding any other clause contained in this Agreement, *the preceding sentence shall not be severable from this Agreement in any case in which the dispute to be arbitrated is brought as a class, collective or representative action*."  (Italics added.)  " 'The fundamental rule is that interpretation of . . . any contract . . . is governed by the mutual intent of the parties at the time they form the contract.  [Citation.]  The parties' intent is found, if possible, solely in the contract's written provisions.  [Citation.]  "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation."  [Citation.]  If a layperson would give the contract language an unambiguous meaning, we apply that meaning.' "  (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1129.)  The parties' expressed objective intent, not their unexpressed subjective intent, governs.  (*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 47.)

Likewise, " '[w]hether a contract is entire or separable *depends upon its language and subject matter*, and this question is one of construction to be determined by the court

23

*according to the intention of the parties*. If the contract is divisible, the first part may stand, although the latter is illegal. [Citation.]' [Citations.] It has long been the rule in this state that ' "When the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the Courts will make the distinction, for the . . . law . . . [divides] according to common reason; and having made that void that is against law, lets the rest stand. . . ." ' [Citation.] Thus, the rule relating to severability of partially illegal contracts is that a contract is severable if the court can, *consistent with the intent of the parties*, reasonably relate the illegal consideration on one side to some specified or determinable portion of the consideration on the other side." (*Keene v. Harling* (1964) 61 Cal.2d 318, 320-321, fn. omitted, italics added; see also *Lewis v. Shell Oil Co.* (1934) 220 Cal. 80.) Thus, a contract is not divisible "where there is a showing that it was the intention of the parties to treat [their] agreement as an entire contract, and where it appears that their engagements would not have been entered into except upon the clear understanding that the full object of the contract should be performed . . . ." (*Yeng Sue Chow v. Levi Strauss & Co.* (1975) 49 Cal.App.3d 315, 326; see also *Stern v. Sunset Road Oil Co.* (1920) 47 Cal.App. 334, 340.)

We decide the severability of the invalid PAGA waiver under these principles, and conclude that paragraph No. 4 unambiguously reflects the parties' intent that where a dispute is subject to the arbitration agreement (i.e., "to be arbitrated") and is "brought as a class, collective or representative claim" as would be Edwards's claims including her PAGA claim, the provision waiving such claims, even if later determined to be illegal or unenforceable, cannot be severed from the remainder of the agreement. This is so

24

"[n]otwithstanding any other clause in the agreement," including the severance clause of paragraph No. 10. The dispute resolution agreement, therefore, is not divisible, but presents an all-or-nothing proposition: when a Securitas employee asserts class, collective or representative claims, either the employee foregoes his or her right to arbitrate such claims, or the entire agreement to arbitrate disputes is unenforceable and the parties must resolve their disputes in superior court. We view this construction as clear, but to the extent the dispute resolution agreement's language is uncertain on the point and one can glean a different outcome from the language, our conclusion would nevertheless stand under the principle that "a court should construe ambiguous language against the interest of the party that drafted it." (*Mastrobuono v. Shearson Lehman Hutton, Inc.*, *supra*, 514 U.S. at p. 62; see also *Rebolledo v. Tilly's, Inc.*, *supra*, 228 Cal.App.4th at p. 913 [ambiguities in form contracts are to be construed against the drafter].)

Under our construction of the parties' dispute resolution agreement, though the superior court correctly determined the class action waiver to be unenforceable, it erred by then severing the waiver from the agreement and ordering Edwards's entire complaint, including her class and PAGA claims, to be resolved in arbitration. Because the dispute resolution agreement is unenforceable in its entirety, we direct the court to vacate its order and enter a new order denying Securitas's motion to compel arbitration.

25

DISPOSITION

Let a writ of mandate issue directing the superior court to (1) vacate its September 9, 2014 order that the parties proceed to arbitrate Denise Edwards's entire complaint and (2) enter a new order denying Securitas Security Services USA, Inc.'s amended motion to compel arbitration.  In all other respects, the petition is denied.  The stay issued on November 18, 2014, is vacated.  The parties are to bear their own costs in this writ proceeding.


O'ROURKE, J.

WE CONCUR:


NARES, Acting P. J.


McINTYRE, J.

26