Filed 12/31/15  Madrid v. Kolbisen CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| IRENE MADRID,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JOHN KOLBISEN et al.,<br><br>Defendants and Respondents. | A144805<br><br>(San Mateo County<br>Super. Ct. No. CIV 531191) |

Plaintiff Irene Madrid and defendant John Kolbisen were divorced in 2011.  In their marital settlement agreement (MSA), each elected to continue to hold a half-interest in the family business.  The MSA also vested continuing jurisdiction in the family court to monitor management of jointly owned property and to "divide or order the sale" of such property.  In 2014, after conflicts arose in the operation of the business, Kolbisen filed a request for order in the family court seeking forced sale to him of Madrid's half-ownership in the business.  In response, Madrid filed this action contending the parties' dispute was governed by a shareholder agreement, rather than the MSA.  The trial court granted Kolbisen's special demurrer without leave to amend, concluding the family court had exclusive jurisdiction over the dispute.  We affirm.

## I.  BACKGROUND

Madrid and Kolbisen divorced in 2011, after a long marriage.  Following the divorce, the pair continued their ownership and operation of a series of swim schools (the business) that they founded in 1979.  The business is operated through two corporations and a limited liability company.  While the division of duties and assets among these

entities is not entirely clear from the record, it appears that one corporation, La Petite Baleen, Inc. (Baleen), owns the intellectual property of the business and employs certain management personnel, while the two other entities operate schools in different locations. Madrid and Kolbisen are equal and sole owners of Baleen and the limited liability company, known as LPB Partners, LLC, while ownership of the second corporation is divided among eight family members, including Madrid and Kolbisen. Kolbisen is the chief executive officer of the three entities.

In April 2014, Kolbisen filed a request for order (request) in the family court, asking the court to determine the value of Madrid's share of the business and order the forced sale of that interest to him. In a declaration submitted with the request, Kolbisen stated he is actively involved in running the business on a daily basis. Although Madrid had been only sporadically involved for the prior 16 years and held no official position in the business, she increased her activity in 2013. During that year, there was conflict among Madrid, Kolbisen, and other family members about ownership and operation of the business. At the time of the divorce, Kolbisen stated, he was hopeful the couple could continue to own and operate the business together, but he had been persuaded by the subsequent conflicts that continued successful operation of the business requires the exclusion of Madrid. Accordingly, he sought a valuation of her interest and its forced sale to him.

Kolbisen's invocation of family court jurisdiction was premised on the terms of the MSA, executed in August 2011. The MSA, which divides the parties' assets and liabilities, provides that the family court retains jurisdiction to enforce the MSA and "to monitor the management of and/or to divide or order the sale of all property which the parties own jointly after the effective date of this Agreement." As to the business, the MSA states, "The parties agree to continue to jointly own their businesses, commonly known as La Petite Baleen, Inc. and LPB Partners, LLC as set forth more fully in their Shareholder Agreement," a copy of which was attached to the MSA. In addition, the two lists attached to the MSA dividing the marital property both state Madrid and Kolbisen retain "50% ownership with [the other person] in the parties' business known as La Petite

Baleen, Inc. and 32.5% ownership with [the other person] . . . in the parties' business known as LPB Partners LLC as set forth more fully in the Shareholder Agreement."[1]

Following Madrid's filing of an objection to the request, the family court scheduled a November 2014 trial on the issue of "jurisdiction." That trial was vacated at Madrid's request upon her filing of this civil action against Kolbisen and Baleen shortly before the trial date.

The first amended complaint (complaint), Madrid's operative pleading, contains causes of action for declaratory and injunctive relief, breach of contract, and breach of fiduciary duty. In addition to damages, the complaint seeks a declaration that any sale of interests in the business is governed by the shareholder agreement between Madrid and Kolbisen referred to in the MSA (shareholder agreement), rather than the MSA itself, and an injunction against Kolbisen's pursuit of the request in the family court. The causes of action for damages are premised on the allegation that Kolbisen's decision to seek a forced sale under the MSA was a breach of the shareholder agreement.

Under the shareholder agreement, which predates the MSA by two months, disputes regarding "any decision that affects the operational and management aspects of the Company" are subject to mediation and arbitration. The shareholder agreement addresses voluntary sales of shares, which are subject to certain rights of first refusal, disposition of shares on death, and "Transfer of Shares Other Than By Sale or Death," which are also subject to the rights of first refusal. The shareholder agreement neither provides for nor expressly prohibits the type of forced sale sought by Kolbisen. In addition, the shareholder agreement appears to govern only the ownership of Baleen; in any event, it does not mention the other two entities involved in the business.[2]

---

[1] It appears that creation of the second corporation postdated the MSA. Further, because the other owners of the limited liability company were bought out by Madrid and Kolbisen after the execution of the MSA, the pair are now its equal and sole co-owners.

[2] Notwithstanding the statement in the MSA that the parties' ownership of the limited liability company is "set forth more fully in their Shareholder Agreement," we could find no reference to the limited liability company in the shareholder agreement.

3

Kolbisen filed a special demurrer and motion to strike the complaint, arguing Madrid's action was subject to abatement because the family court had commenced proceedings on the same issue under the MSA. Kolbisen also argued any inconsistency between the MSA and the shareholder agreement must be resolved in favor of the terms of the MSA.

The trial court sustained Kolbisen's special demurrer "on the ground of exclusive concurrent jurisdiction," which "requires abatement of the latter-filed action [*sic*]." The court's order declared that the family court had exclusive jurisdiction to enforce the MSA or to " 'divide or order the sale of all property which the parties own jointly,' " quoting the MSA. The motion to strike was held to be moot.

## II. DISCUSSION

Madrid contends the trial court erred in sustaining the demurrer and finding exclusive jurisdiction in the family court.

The doctrine of exclusive concurrent jurisdiction, cited by the trial court in granting the special demurrer, holds that when two superior courts are equally vested with jurisdiction to hear a dispute, the first court to assume jurisdiction has exclusive and continuing jurisdiction over it. (*Plant Insulation Co. v. Fibreboard Corp.* (1990) 224 Cal.App.3d 781, 786–787.) Because the request and the complaint were both filed with the San Mateo County Superior Court, that doctrine is not applicable.[3]

An even more comprehensive doctrine of preclusion, however, operates among the departments of a single superior court. Under the doctrine of priority of jurisdiction, one department of a superior court is without power to interfere with a matter previously assigned to another department. As explained in *Glade v. Glade* (1995) 38 Cal.App.4th 1441, " ' "where a proceeding has been . . . assigned for hearing and determination to one department of the superior court by the presiding judge . . . and the proceeding . . . has not been finally disposed of . . . it is beyond the jurisdictional authority of another

---

[3] For this reason, we do not address the parties' arguments directed specifically at the application of the exclusive concurrent jurisdiction doctrine.

4

department of the same court to interfere with the exercise of the power of the department to which the proceeding has been so assigned . . . . If such were not the law, conflicting adjudications of the same subject-matter by different departments of the one court would bring about an anomalous situation and doubtless lead to much confusion. [Citation.]" . . .' [Citations.] [¶] 'One department of the superior court cannot enjoin, restrain, or otherwise interfere with the judicial act of another department of the superior court. . . . A judgment rendered in one department of the superior court is binding on that matter upon all other departments until such time as the judgment is overturned. [Citation.] . . .' [Citations.] [¶] ' . . . "[I]f the principle of priority of jurisdiction over an assigned case . . . is applicable to ordinary departments, it must be even more true of departments exercising distinct subject matter jurisdiction." ' " (*Id.* at pp. 1449–1450, fn. omitted [summary judgment in foreclosure action reversed because family court had priority of jurisdiction over dispute concerning the property]; see similarly *Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031, 1040–1041, disapproved on other grounds as explained in *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 844.)

Kolbisen's request was filed in the family court before Madrid filed her action. Accordingly, under the doctrine of priority of jurisdiction, the trial court was without power to grant the declaratory and injunctive relief requested by Madrid in the complaint, since that relief necessarily interfered with the activities of another department of the court in a prior-filed proceeding. The issues raised by Madrid in her claims for declaratory and injunctive relief—the authority of the family court to hear and/or grant the request for order—could and should have been raised in the family court proceeding. Indeed, although the pleadings from the family court proceeding are not in the appellate record, it appears from the docket sheet that Madrid *did* raise these issues in that proceeding, since the family court scheduled a trial on the issue of jurisdiction. It was therefore incumbent on the trial court, as it recognized, to leave resolution of the issues to the family court.

Madrid contends the trial court's dismissal of her claims for breach of contract and breach of fiduciary duty was improper because the family court cannot adjudicate those claims. Both of these claims, however, are premised on the allegation that Kolbisen "breached the [shareholder agreement] by failing to abide by the provisions of the Agreement and seeking to force a buyout of [Madrid's Baleen] shares in violation of the [shareholder agreement]." The propriety of Kolbisen's request under the shareholder agreement is a central issue before the family court in its consideration of the request. Accordingly, any ruling by the trial court on the damages claims would necessarily interfere with the family court's proceedings. The priority of jurisdiction doctrine required dismissal of these claims as well.

Because the trial court was required to abstain from exercising jurisdiction over Madrid's action, resolution of this appeal does not require us to address the issues raised by Madrid relating to the family court's jurisdiction. Nonetheless, we proceed to do so to avoid relitigation and delay upon remand.

Marital settlement agreements are interpreted under the same rules applicable to other contracts. (*In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 501 (*Thorne*).) " ' "The fundamental rule is that interpretation of . . . any contract . . . is governed by the mutual intent of the parties at the time they form the contract. [Citation.] The parties' intent is found, if possible, solely in the contract's written provisions. [Citation.] 'The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation.' [Citation.] If a layperson would give the contract language an unambiguous meaning, we apply that meaning." ' " (*Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1125.)

We conclude the family court has jurisdiction to hear Kolbisen's request under the MSA. The request seeks an order requiring compulsory sale by Madrid of her interest in the business to Kolbisen. That request grows out of difficulties experienced by the parties in their management of the business. The MSA grants to the family court the

continuing jurisdiction "to monitor the management of and/or to divide or order the sale of all property which the parties own jointly after the effective date of this Agreement." By its plain meaning, this language confers on the family court the continuing jurisdiction to hear disputes arising from the parties' management of jointly owned former marital assets and, if appropriate, to resolve those disputes by dividing or ordering the sale of the assets. Given the personal conflicts that sometimes arise after a divorce, notwithstanding the best intentions of the parties, such a provision was prudent.

The terms of the MSA unambiguously include the business among the jointly owned properties. They expressly state, "The parties agree to continue to jointly own their businesses," and list each party as having partial ownership of each business entity "with" the other party. Kolbisen's request was therefore properly within the retained jurisdiction of the family court.

Madrid argues that the business was divided by the MSA because the parties hold their interests in the business entities as separate property. Separate ownership of *interests* in the business, however, does not preclude joint ownership of the business. On the contrary, because both Madrid and Kolbisen own an interest in each of the business entities, each entity is, by definition, jointly owned. Yet even if Madrid's argument was correct as a matter of corporations law, the plain language of the MSA evidences an unambiguous intent that the business be treated as jointly owned property for purposes of the MSA, as discussed above.[4]

Madrid also argues the shareholder agreement is paramount and precludes the relief sought by Kolbisen. While it is true the shareholder agreement contains various provisions addressing disposition of shares in Baleen, it does not purport to be exclusive

---

[4] Madrid also contends the family court did not have jurisdiction over a dispute concerning ownership of the business because its ownership was settled by the provisions of the MSA. In so arguing, Madrid relies on *Thorne*, which holds that the family court is ordinarily without jurisdiction to modify a judgment of dissolution once it has become final. (*Thorne, supra*, 234 Cal.App.4th at p. 499.) *Thorne* recognizes, however, that an exception to the general rule occurs when the parties expressly reserve jurisdiction, as occurred here. (*Id.* at p. 500.)

in that regard. Further, it says nothing about the disposition of interests in the other two entities that constitute the business. The MSA, in contrast, governs the entirety of the business as a jointly owned property. In any event, the MSA was entered into after the shareholder agreement and expressly refers to it. Accordingly, the MSA amended the shareholder agreement to the extent of any inconsistency between the two. The power granted to the family court in the MSA to divide or order the sale of jointly owned assets would therefore supersede any contrary provisions in the shareholder agreement.[5]

Madrid also contends the first refusal rights in the shareholder agreement are inconsistent with Kolbisen's request and must be honored by the family court. Those rights, however, apply only when an owner seeks to sell shares to a third party. Kolbisen's proposed forced sale, by contrast, would not introduce third parties into ownership.

It is important we make clear the extent of our holding. We hold only that the family court has jurisdiction—that is, has the authority—to rule on Kolbisen's request. We express no opinion as to what that ruling should be. Most importantly, we do not mean to suggest a view on the central issues raised by the request—(1) whether the MSA's grant to the family court of the authority "to divide or order the sale" of the business includes the authority to order a forced sale of shares from one owner to the other, and (2) if the MSA grants that authority, whether such a sale should be ordered in these circumstances. It is for the family court to resolve these issues in the first instance, and, in doing so, the family court may consider all relevant evidence.

### III. DISPOSITION

The judgment of the trial court is affirmed. Kolbisen may recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

[5] In so holding, we do not mean to suggest the shareholder agreement is irrelevant to the family court's consideration of the relief sought by Kolbisen. We hold only that the shareholder agreement does not preclude the family court's consideration of the request.

_____
Margulies, J.

We concur:


_____
Humes, P.J.


_____
Banke, J.

A144805