Filed 5/26/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHANGO COFFEE, INC., | B267358 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC591586) |
| v. | |
| APPLIED UNDERWRITERS, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David Sotelo, Judge.  Appeal Dismissed.

Fine, Boggs & Perkins, Michael K. Perkins, Cory J. King and William D. Wheelock for Defendant and Appellant.

Law Office of Thomas M. Hall and Thomas Montague Hall for Plaintiff and Respondent.

## INTRODUCTION

Defendant Applied Underwriters, Inc. (Applied) purports to appeal from the trial court's order denying its renewed petition to compel arbitration filed pursuant to Code of Civil Procedure section 1008, subdivision (b).[1]  Because an order denying a renewed motion or application under section 1008, subdivision (b) is not appealable (see *Tate v. Wilburn* (2010) 184 Cal.App.4th 150, 160 (*Tate*)), we dismiss the appeal.

## FACTS AND PROCEDURAL BACKGROUND

On January 2, 2014, plaintiff Chango Coffee, Inc. (Chango) filed a three count complaint against Applied for breach of contract, conversion and fraud.  The complaint alleges the parties entered a written agreement under which Chango granted Applied access to its checking account for the purpose of providing payroll processing and payment services, and Applied improperly withdrew funds from Chango's account "without permission[,] . . . justification or purpose under the contract."

On April 23, 2014, Applied filed a petition to compel arbitration pursuant to a written agreement to arbitrate.[2]  In a supporting declaration, Applied's accounts settlement manager,

---

[1]    Statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]    Concurrent with its petition to compel arbitration, Applied filed a motion to change venue (styled as a motion to dismiss) pursuant to a contractual forum selection clause.  The trial court denied the motion.  Applied did not timely petition for review by mandamus.  (See Code Civ. Proc., § 400; *Calhoun v. Vallejo City Unified Sch. Dist.* (1993) 20 Cal.App.4th 39, 41 ["Review of an order granting or denying a motion for change of venue lies only by petition for writ of mandate"].)

Ed Karmazin, declared that, in July 2004, Applied and Chango "entered into a written agreement," under which Applied agreed to provide Chango "payroll processing, human resource support, training, workers' compensation insurance, and employment-related insurance from authorized insurance companies." The purported agreement had "two parts," which Karmazin described as follows: "First, the customer completes a document entitled, 'SolutionOne Application and Agreement for Services.' [*sic*] . . . After reviewing the application document to ensure the customer qualifies for participation in the SolutionOne program, [Applied] will accept the customer into the SolutionOne program and the Agreement is formed. When [Applied] accepts the customer's SolutionOne Application and Agreement, [Applied] delivers to the customer a document entitled, 'SolutionOne Services Agreement.' "[3]

Karmazin declared that Chango's corporate secretary, Tad Yenawine, signed the application on July 14, 2004. The signed document, entitled "SolutionOne Application and Agreement for Service," contains provisions relating to Applied's services, payroll processing, billing and payment, and authorization to access Chango's banking account. The document concludes with the clause, "I (we) accept [Applied's] standard Service Agreement Terms and Conditions."

---

[3]     At times the relevant documents used the registered trademark symbol when referencing SolutionOne®. For consistency, we have omitted it in all instances.

3

According to Karmazin, after receiving Chango's signed SolutionOne Application and Agreement for Service, Applied delivered to Chango a document entitled "SolutionOne Services Agreement."  The SolutionOne Services Agreement contains the subject arbitration clause.  Additionally, Karmazin declared that, as part of the SolutionOne program, Chango periodically submitted documents entitled "Weekly Reporting Form," which contained the following clause:  "Each submission of payroll sent to us for processing is ratification and confirmation of your acceptance of all the terms and conditions of the current Solution One Service Agreement."  (Italics omitted.)

In its petition for arbitration, Applied argued the signed SolutionOne Application and Agreement for Service incorporated the terms of the SolutionOne Services Agreement, including the latter document's arbitration provision.  Applied further argued that Chango ratified the terms of the SolutionOne Services Agreement when it signed and submitted its Weekly Reporting Forms, commencing in April 2004.

Chango opposed the petition to compel arbitration.  In a supporting declaration, Chango's corporate secretary, Yenawine, acknowledged signing the SolutionOne Application and Agreement for Service.  However, Yenawine declared that, apart from the SolutionOne Application and Agreement for Service, Chango was "not asked to agree to any additional terms."  He specifically denied agreeing to arbitrate disputes on behalf of Chango.

4

On November 18, 2014, the trial court denied Applied's petition to compel arbitration. In a written order, the court concluded that the critical final clause in the signed SolutionOne Application and Agreement for Service referred to the terms contained in the signed document itself, and not to the terms of the separate SolutionOne Services Agreement. The court observed that Applied had offered three documents in support of its petition to compel arbitration: (1) the " 'Solution Application And Agreement For Service' ('service' is singular)"; (2) the " 'SolutionOne Services Agreement' ('services' is plural)"; and (3) the " 'Weekly Payroll Form' " [which] refers to 'the current SolutionOne Service Agreement' " (service is singular). The critical clause, the court explained, provided for Chango to be bound by the " 'Service Agreement Terms and Conditions,' " with the word "service" in the singular, as in the signed " 'SolutionOne Application and Agreement for Service.' " Thus, the court reasoned the signed document did not incorporate the terms of the " 'SolutionOne Services Agreement,' " or the arbitration provision stated therein. For the same reason, the court concluded the Weekly Reporting Forms did not bind Chango to the arbitration provision, because those forms referred to the " 'terms and conditions of the current SolutionOne Service Agreement,' " with "service" in the singular.

On November 19, 2014, the clerk of the superior court gave notice of the ruling denying Applied's petition to compel arbitration. Applied did not appeal from the ruling.

On June 12, 2015, Applied filed a renewed motion to compel arbitration pursuant to section 1008, subdivision (b). In support of its renewed motion, Applied submitted an excerpt from the May 5, 2015 deposition of Chango's designated person most

5

knowledgeable, Yenawine, in which Yenawine testified over Chango's objection that he considered the SolutionOne Services Agreement to be part of the contract that Chango claimed had been breached. Applied argued the testimony constituted " 'new or different' " facts under section 1008, subdivision (b), insofar as Yenawine had "previously declared in opposition to the original [petition to compel arbitration] that the SolutionOne Services Agreement was not part of the contract between the parties."

On August 12, 2015, the trial court entered an order denying the renewed motion. The court's order explained, "The alleged new or different facts, Mr. Yenawine's deposition testimony, does not in any manner alter the court's legal analysis of [the original order]." On October 2, 2015, Applied filed a notice of appeal from the August 12, 2015 ruling.

**DISCUSSION**

After reviewing the pertinent procedural history and Applied's notice of appeal, this court asked the parties to submit supplemental briefs addressing the appealability of an order denying a renewed motion filed pursuant to section 1008, subdivision (b). For the reasons that follow, we conclude an order denying a renewed motion is not appealable.

Section 1008 provides, in pertinent part, as follows: "(a) When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order. The party making the

6

application shall state by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown.  [¶]  (b) A party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law, in which case it shall be shown by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown."

The court in *Tate* addressed the very issue we confront in this appeal, and concluded that orders on motions filed pursuant to section 1008, subdivision (b), like those on motions filed pursuant to section 1008, subdivision (a), are not appealable. (*Tate, supra,* 184 Cal.App.4th at p. 160.)  In reaching this conclusion, the *Tate* court began by examining the purposes and related nature of the two subdivisions, observing:  "As indicated by the text of section 1008, motions for reconsideration under section 1008, subdivision (a), and renewed motions under section 1008, subdivision (b) are closely related.  [Citation.]  A party filing either a motion under section 1008, subdivision (a) or (b) is seeking a new result in the trial court based upon 'new or different facts, circumstances, or law.' "  (*Tate,* at pp. 159-160.)  In view of the subdivisions' essentially identical purposes, the *Tate* court reasoned that the rationale for declining to grant separate appealability to orders denying motions for reconsideration—i.e., "to eliminate the possibilities that (1) a nonappealable order or judgment would be made appealable, (2) a party would have two appeals from the same decision, and (3) a party would obtain an

7

unwarranted extension of time to appeal"—applied with equal force to an order denying a renewed motion pursuant to section 1008, subdivision (b). (*Tate,* at p. 160.) Indeed, the court observed that " the possibility that a party may obtain an unwarranted extension of time to appeal is actually more of a concern with respect to a renewed motion under section 1008, subdivision (b), in light of the fact that such a motion may be brought at any time, while a motion for reconsideration must be brought 'within 10 days after service upon the party of written notice of entry of the [underlying] order.' " (*Tate,* at p. 160.) Thus, finding no reason to depart from the established rationale, the *Tate* court held that "an order denying a renewed motion pursuant to section 1008, subdivision (b) is not appealable." (*Tate,* at p. 160.)

In its supplemental brief, Applied argues *Tate* has been abrogated by subsequent legislative action; specifically, the 2011 amendment to section 1008 that added subdivision (g). (Stats. 2011, ch. 78 (Assem. Bill 1067), § 1.) Section 1008, subdivision (g) permits a party to include an appeal from a motion for reconsideration with an existing appeal from the trial court's original ruling. The statute provides: "An order denying a motion for reconsideration made pursuant to subdivision (a) is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." (§ 1008, subd. (g).) Because the amendment did not likewise provide that an order denying a renewed motion made pursuant to section 1008, subdivision (b) is not separately appealable, Applied argues the amendment effectively abrogated *Tate.* We disagree.

8

Our usual legislative intent analysis suggests the opposite presumption concerning the amendment. "The Legislature is presumed to have knowledge of existing judicial decisions when it enacts and amends legislation. When the Legislature amends a statute that has been the subject of judicial construction, changing it only in part, the presumption is that the Legislature intended to leave the law unchanged in the aspects not amended." (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 642–643.) Thus, contrary to Applied's contention, the Legislature's decision not to address the appealability of orders denying renewed motions under section 1008, subdivision (b) suggests the Legislature intended the *Tate* court's construction to control.

Moreover, as the Senate Judiciary Committee observed in its analysis of the amending legislation, "Section 1008's purpose is ' "to conserve judicial resources by constraining litigants who would endlessly bring the same motions over and over, or move for reconsideration of every adverse order and then appeal the denial of the motion to reconsider." ' (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1067 (2011-2012 Reg. Sess.) as amended Apr. 25, 2011, p. 4.)" (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 839-840.) That observation is consistent with the rationale the *Tate* court relied upon in concluding an order denying a renewed motion under section 1008, subdivision (b) is not appealable. (See *Tate, supra,* 184 Cal.App.4th at p. 160.) We find the subsequent legislative action supports the reasoning and conclusion in *Tate*.

Because we agree with the reasoning in *Tate*, we conclude that an order denying a renewed motion under section 1008, subdivision (b) is nonappealable. We therefore have no jurisdiction to entertain this appeal.[4]

---

[4] Alternatively, Applied argues we should treat its notice of appeal as a petition for writ of mandate and address the merits of the court's order in a proceeding for extraordinary relief. (See, e.g., *Tate, supra,* 184 Cal.App.4th at pp. 160-161, fn. 10.) We decline to do so. At a minimum, to obtain writ review a petitioner must show there is no adequate remedy at law and that irreparable injury will result if the writ is not granted. (*O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1439.) " '[A] party is not entitled to obtain review of an appealable judgment or order by means of a petition for an extraordinary writ where he or she failed to timely file an appeal from the ruling.' " (*Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1459 [declining to treat appeal from an order denying motion for reconsideration as a petition for writ relief].) Here, the trial court based its original order on the text of the signed SolutionOne Application and Agreement for Service—not the extrinsic statements made in Yenawine's declaration. Also, in ruling on Applied's renewed motion, the court sustained Chango's objection and struck Yenawine's deposition testimony concerning the interplay of the two agreements. For these reasons, the court denied the renewed motion insofar as Allied relied upon Yenawine's testimony, which, as the court stated in its order, did "not in any manner alter the court's *legal* analysis" of the critical contract language. (Italics added.) Having failed to timely appeal from the original appealable order, Applied cannot obtain belated writ review by raising extrinsic and dubious facts that did not factor into the court's legal analysis.

## DISPOSITION

The appeal is dismissed.  Chango Coffee is awarded its costs on appeal.

## CERTIFIED FOR PUBLICATION

JOHNSON (MICHAEL), J.*

We concur:

EDMON, P. J.

ALDRICH, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.