Filed 4/24/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ROCHELLE WESTMORELAND,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KINDERCARE EDUCATION LLC,<br><br>        Defendant and Appellant. | A164090<br><br>(San Francisco County<br>Super. Ct. No. CGC-19-573125) |

Appellant Kindercare Education LLC (Kindercare) first asked the trial court to compel arbitration of respondent Rochelle Westmoreland's claims under the Labor Code and to stay her claims under the California Private Attorneys General Act (PAGA) back in 2019. A year later, the trial court granted the motion, but this court subsequently issued an alternative writ of mandate denying it. Kindercare unsuccessfully petitioned the California Supreme Court for review and the United States Supreme Court for certiorari.

Kindercare now returns to contend that "new law" requires that we compel Westmoreland to arbitrate at least some part of her case. Kindercare urges that our sister district's decision in *Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 649 (*Western Bagel*), specifically its discussion of *Lamps Plus, Inc. v. Varela* (2019) 139 S.Ct. 1407 (*Lamps Plus*), requires that we revisit our earlier decision. Kindercare also argues that the United States

1

Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906 (*Viking River*), a footnote in this court's decision in *Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 218, fn. 5 (*Tesla*), and the recent decision in *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281 (*Piplack*) further support its position.

Kindercare appeals from an unappealable order. Simply put, "an order denying a renewed motion," including a renewed motion to compel arbitration, "is not appealable." (*Chango Coffee, Inc. v. Applied Underwriters, Inc.* (2017) 11 Cal.App.5th 1247, 1252 (*Chango Coffee*); *Tate v. Wilburn* (2010) 184 Cal.App.4th 150, 160 (*Tate*).) Realizing the error, Kindercare now asks us to exercise our discretion to hear the appeal as a petition for writ of mandate. We will do so in order to reach the merits, given the unusual circumstances of this case and because "refusing review at this point . . . would result in a significant waste of time and judicial resources." (*Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 768, 770–771 (*Phillips*).)

We agree with the trial court that *Western Bagel* is not "new law" under Code of Civil Procedure section 1008 that justifies a different decision on Kindercare's renewed motion to compel arbitration. We conclude that the decision not to compel arbitration is mandated by the language and structure of the arbitration agreement. The result we reach here remains consistent with *Western Bagel* and the other cases Kindercare relies upon, including *Lamps Plus*. The result is also appropriate in light of recent precedent, including the *Viking River* decision.

## BACKGROUND

### A. *Kindercare's Arbitration Agreement*

Westmoreland alleges she was a director for Kindercare from April 2016 until January 2019. When she was hired, Westmoreland electronically

signed a "Mutual Arbitration Agreement Regarding Wages and Hours."
Kindercare's arbitration agreement is governed by the Federal Arbitration
Act (FAA) and requires arbitration of all "covered claims." " 'Covered claims'
are any statutory or common law legal claims alleging the underpayment,
overpayment, or mistimed payment of wages, expenses, loans,
reimbursements, bonuses, commissions, advances, or any element of
compensation, based on claims for overtime, on-the-clock, off-the-clock or
other uncompensated hours worked claims, timing or amount of pay at
separation, deduction or fee disputes, travel time claims, meal or rest period
claims, overpayment claims, claims of failure to reimburse or repay loans or
advances, claims over improper or inaccurate pay statements, claims to fines
or penalties, or any other claimed violation of wage-and-hour practices or
procedures under local, state or federal statutory or common law." The
agreement expressly excludes "claims alleging discrimination, harassment, or
retaliation. Also excluded . . . are any claims . . . that cannot be required to
be arbitrated as a matter of law." The arbitration agreement states,
"arbitration is the only litigation forum for resolving covered claims and that
we are both waiving the right to a trial before a judge or jury in federal or
state court in favor of arbitration."

Complicating matters, Kindercare's arbitration agreement includes a
provision described as a "Waiver of Class and Collective Claims." It states,
"KU and I also agree that covered claims will be arbitrated only on an
individual basis and that both KU and I waive the right to participate in or
receive money or any other relief, to the maximum extent permitted by law,
from any class, collective, or representative proceeding. Any arbitrator
hearing my claim may not: (i) combine more than one individual's claim or
claims into a single case; (ii) participate in or facilitate production of class-

3

wide contact information or notification of others of potential claims; or (iii) arbitrate any form of a class, collective, or representative proceeding."

Complicating matters further, a "Savings Clause & Conformity Clause" in the agreement requires that "[i]f any provision of this agreement is determined to be unenforceable or in conflict with a mandatory provision of applicable law, it shall be construed to incorporate any mandatory provision, and/or the unenforceable or conflicting provision shall be automatically severed and the remainder of the agreement shall not be affected. Provided, however, that if the Waiver of Class and Collective Claims is found to be unenforceable, then this agreement is invalid and any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims." Westmoreland refers to the "Savings Clause" as a "poison pill."

## A. *Westmoreland's Claims*

Kindercare terminated Westmoreland on January 7, 2019. She filed suit a few weeks later. The operative first amended complaint asserts causes of action for (1) violation of Labor Code sections 201 through 203, including both on an individual and class action basis; and (2) violation of PAGA (Lab. Code, § 2698 et seq.). Westmoreland alleges that Kindercare violated Labor Code sections 201 through 203, 212, and 213, because it issued an electronic paycard (with usage fees and access restrictions) as final payment of wages to employees who resigned or were terminated, and thus failed to meet the requirement to pay wages within 72 hours after separation of employment.

## B. *Kindercare's Original Motion to Compel Arbitration and the Alternative Writ of Mandate*

Kindercare moved to compel arbitration of Westmoreland's individual non-PAGA claims, and to stay her PAGA claim. On January 13, 2020, the

4

trial court granted the motion. Two months later, Westmoreland sought a writ of mandate from this court.

On January 29, 2021, this court issued an alternative writ of mandate in a succinct order. Citing *Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1126 (*Securitas*), the court wrote, "Although the superior court correctly concluded the PAGA waiver is unenforceable, it erred by severing the unenforceable PAGA waiver from the remainder of the Waiver of Class and Collective Claims and the remainder of the arbitration agreement. The acknowledged ambiguity in the Savings Clause & Conformity clause should be resolved against Real Party in Interest, the party that drafted the arbitration agreement." It concluded: "the unenforceable PAGA waiver is not severable from the rest of the agreement and, therefore, renders the entire agreement unenforceable."

The trial court notified the parties of its intent to comply with the alternative writ, and complied after soliciting further briefing from the parties. This court denied Kindercare's request for rehearing. The California Supreme Court and then the United States Supreme Court rejected Kindercare's subsequent petitions for review and for certiorari.

## C. *Kindercare's Renewed Motion to Compel Arbitration*

On July 27, 2021, Kindercare filed a "Renewed Motion to Compel Arbitration of Non-PAGA Claims and Stay PAGA Claims Based on New Law" with the trial court. Invoking Code of Civil Procedure section 1008, Kindercare based its motion on "new law" in the form of the Second District's July 15, 2021 decision in *Western Bagel*. Kindercare argued that *Western Bagel* required arbitration under similar circumstances and was "more persuasive" than the alternative writ issued by this court earlier in the case,

5

so following *Western Bagel* rather than continuing to abide by the alternative writ "should be the easy choice."

The trial court disagreed and denied Kindercare's renewed motion. The trial court held that *Western Bagel* did not reflect an intervening change in the law for purposes of Code of Civil Procedure section 1008. The new decision had not overturned *Securitas*, which the Court of Appeal cited in its alternative writ. The trial court also distinguished the facts in *Western Bagel* from the facts here. To the extent Kindercare argued that *Western Bagel* had "created a split of California appellate authority," the trial court found this case more similar to *Securitas* than *Western Bagel*.

Kindercare appealed the denial of its renewed motion.

## D. *Request for Further Briefing*

While the appeal was pending, the United States Supreme Court issued its much-anticipated decision in *Viking River*. We asked the parties to brief the impact of *Viking River* on the case, if any. Westmoreland addresses the decision in her responsive brief and Kindercare discusses *Viking River*'s implications in its reply brief.

## DISCUSSION

## I. Appealability

Unfortunately for Kindercare, "an order denying a renewed motion," including a renewed motion to compel arbitration, "is not appealable." (*Chango Coffee*, *supra*, 11 Cal.App.5th at p. 1252; *Tate*, *supra*, 184 Cal.App.4th at p. 160.) Kindercare suggests that Westmoreland has conceded that "the denial of the renewed motion to compel arbitration is an immediately appealable order." Notwithstanding Westmoreland's silence in her responsive brief, we police our own jurisdiction regardless of whether the parties aid in that effort. (*People v. Clark* (2021) 67 Cal.App.5th 248, 254–

6

255 [" '[T]he right to an appeal is entirely statutory; unless specified by statute no judgment or order is appealable.' [Citation.] Because an appealable judgment or order is essential to appellate jurisdiction, the appellate court must consider the question of appealability sua sponte, and dismiss the appeal if the judgment or order is found to be nonappealable"], quoting *Garau v. Torrance Unified School Dist.* (2006) 137 Cal.App.4th 192, 198, and citing *Harrington-Wisely v State of California* (2007) 156 Cal.App.4th 1488, 1494, *Olson v. Cory* (1983) 35 Cal.3d 390, 398.) Neither party brought *Chango Coffee* or *Tate* to our attention.

Kindercare incorrectly argues that we have "jurisdiction over this appeal because orders denying motions to compel arbitration are subject to immediate appeal." While California law permits an immediate appeal of "an order dismissing or denying a petition to compel arbitration" (Code Civ. Proc., § 1294, subd. (a)), Kindercare is appealing an order under section 1008 of the Code of Civil Procedure that denies a "renewed" motion. The decision in *Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781, 787, cited by Kindercare, concerns an order denying a motion to compel arbitration in the first instance, not a renewed motion.

During oral argument, Kindercare suggested that we ought not follow *Chango Coffee* or *Tate* because they were poorly reasoned. We disagree. Both decisions identify at least three compelling reasons why a renewed motion is not an appealable order. The rule exists " 'to eliminate the possibilities that (1) a nonappealable order or judgment would be made appealable, (2) a party would have two appeals from the same decision, and (3) a party would obtain an unwarranted extension of time to appeal.' " (*Chango Coffee, supra*, 11 Cal.App.5th at p. 1252, quoting *Tate, supra*, 184 Cal.App.4th at p. 160.)

7

Code of Civil Procedure section 1008, subdivision (b) governs renewed motions and motions for reconsideration. It provides: "A party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law, in which case it shall be shown by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown." Analyzing the statute, *Chango Coffee* and *Tate* also explain that " 'the possibility that a party may obtain an unwarranted extension of time to appeal' " is particularly acute " 'with respect to a renewed motion under section 1008, subdivision (b), in light of the fact that such a motion may be brought at any time[.]' " (*Chango Coffee, supra,* 11 Cal.App.5th at p. 1253, quoting *Tate, supra,* 184 Cal.App.4th at p. 160.)

*Chango Coffee* also looked to the legislative history of section 1008. The court observed that, in 2011, approximately one year after the *Tate* decision, the Legislature added subdivision (g) to section 1008 but did not make any amendments that altered the rule expressed in *Tate.* (*Chango Coffee, supra,* 11 Cal.App.5th at p. 1253.) The court explained that, as a general rule of statutory interpretation, " 'The Legislature is presumed to have knowledge of existing judicial decisions when it enacts and amends legislation. When the Legislature amends a statute that has been the subject of judicial construction, changing it only in part, the presumption is that the Legislature intended to leave the law unchanged in the aspects not amended.' " (*Ibid.*, quoting *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 642–643.) Consequently, the court reasoned that "the Legislature's decision not to address the appealability of orders denying renewed motions under

section 1008, subdivision (b) suggests the Legislature intended the *Tate* court's construction to control." (*Chango Coffee*, at p. 1253.)

Comments from the legislative history of the 2011 amendment further support the rule. In its analysis, the Senate Judiciary Committee observed that " 'Section 1008's purpose is " 'to conserve judicial resources by constraining litigants who would endlessly bring the same motions over and over, or move for reconsideration of every adverse order and then appeal the denial of the motion to reconsider.' " ' " (*Chango Coffee*, *supra*, 11 Cal.App.5th at p. 1253, quoting Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1067 (2011–2012 Reg. Sess.) as amended Apr. 25, 2011, p. 4.)

## II.  Review as Writ of Mandate

During oral argument, Kindercare asked that we treat its appeal as a writ of mandate. We will exercise our discretion to do so. (*Phillips*, *supra*, 209 Cal.App.4th at p. 768.) Case law has rapidly proliferated in an effort to clarify the interplay between PAGA and the FAA. But not every case concerning PAGA and arbitration is "new law" for purposes of Code of Civil Procedure section 1008, subdivision (b), which is why the trial court's decision-making in this context is not subject to immediate appeal. It is appropriate to review Kindercare's appeal as a writ of mandate in order to clarify the impact of recent case law on the poison pill language in Kindercare's arbitration agreement. (See *Phillips*, at p. 768.)

## III.  The Trial Court's Ruling Was Consistent with Recent Developments in the Law

"The trial court's decision to grant reconsideration of a prior order and to permit renewal of an earlier motion is reviewed for an abuse of discretion." (*Phillips*, *supra*, 209 Cal.App.4th at p. 769, citing *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457.) We conclude that the trial court did not abuse its

9

discretion here, as its decision denying Kindercare's renewed motion to compel arbitration was consistent with the new case law cited by both sides.

### A.  *Western Bagel*

Before the trial court, Kindercare relied heavily on *Western Bagel* as supplying grounds to renew its motion to compel arbitration.  *Western Bagel* reversed a trial court order compelling non-binding arbitration of various wage and hour claims.  (*Western Bagel*, *supra*, 66 Cal.App.5th at pp. 658–659.)  The plaintiff was "a Spanish-speaker who can read and write only basic English."  (*Id.* at p. 654.)  The "severability clause in the Spanish version of the arbitration agreement [the plaintiff] signed indicates the parties agreed to nonbinding arbitration, whereas the severability clause in the original English version of that document suggests the parties consented to binding arbitration."  (*Ibid.*)  The defendant employer, Western Bagel, blamed the different language on a typographical error by a "third party translator when it prepared the Spanish" version.  (*Id.* at p. 657.)  The trial court addressed the ambiguity by construing it against Western Bagel as the drafter, using the California law doctrine of contract interpretation called "contra proferentem."  (*Id.* at p. 663.)

The Court of Appeal reversed, explaining it would apply "the FAA's default rule," as described in *Lamps Plus*, by resolving "any alleged ambiguity as to whether the arbitration would be binding in favor of the form of arbitration contemplated by the FAA—binding arbitration."  (*Western Bagel*, at p. 666.)  The Western Bagel decision echoed *Lamps Plus*, finding, " '[n]either silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself.' "  (*Western Bagel*, at p. 666, quoting *Lamps Plus*, *supra*, 139 S.Ct. at p. 1417.)

10

According to Kindercare, "*Western Bagel* qualified as new law that supported a different outcome on the arbitration question, as it recognized that the United States Supreme Court"—in *Lamps Plus*—"effectively overruled the [*Securitas*] case on which the denial of Kindercare's initial arbitration motion was based." The *Lamps Plus* decision, however, was not "new law" on Kindercare's renewed motion to compel arbitration for purposes of Code of Civil Procedure section 1008. The trial court cited *Lamps Plus* in its decision on Kindercare's original motion to compel arbitration. The Court of Appeal was aware of *Lamps Plus* during the earlier litigation on Westmoreland's petition for writ of mandate in 2020, though it did not discuss that decision (or other relevant legal authorities, including *Securitas*) in the alternative writ of mandate. We agree with the trial court that *Western Bagel* was not adequate to support Kindercare's renewed motion.

## B. *Lamps Plus*

As it was when Kindercare opposed Westmoreland's original petition for writ of mandate, the core of Kindercare's argument continues to be that *Lamps Plus* effectively reversed the *Securitas* decision, which this court cited in connection with its alternative writ. The reference to *Securitas* in the alternative writ is not a reason to depart from the trial court's holding on Kindercare's renewed motion. An alternative writ is customarily succinct; it is an order, similar to an order to show cause. It is not a precedential decision and often does not discuss the merits in detail, as was true here. Nevertheless, Kindercare has repeatedly cited *Lamps Plus* to ask this court, the California Supreme Court, the United States Supreme Court, the trial court (again), and this court (again) to find that the *Securitas* decision has been overruled and to therefore grant Kindercare's motion.

11

Since we did not previously explain why the alternative writ was consistent with *Lamps Plus*, and Kindercare continues to rely on the decision, we will do so here. *Lamps Plus* concerns orders granting class arbitration. In 2010, the United States Supreme Court held that an arbitration agreement that is silent concerning class arbitration does not operate to compel arbitration of class claims. (*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 684 (*Stolt-Nielsen*).) In 2019, *Lamps Plus* extended that rule to encompass situations in which the arbitration agreement was *ambiguous* concerning the possibility of class arbitration, and not just *silent* on the topic. (*Lamps Plus*, *supra*, 139 S.Ct. at p. 1415.) A former employee sued employer Lamps Plus following a data breach for compromising employee tax information. (*Id.* at p. 1413.) Portions of Lamps Plus's arbitration agreement with its former employees "seemed to contemplate 'purely binary claims,' " while the plaintiff argued "other phrases were capacious enough to include class arbitration, such as one stating that 'arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to my employment.' " (*Ibid.*) The Ninth Circuit construed these ambiguities against Lamps Plus, as the drafter of the arbitration agreement, and found the agreement compelled class arbitration. (*Ibid.*) The United States Supreme Court deferred to the Ninth Circuit's finding that the agreement was ambiguous. (*Id.* at p. 1415.)

Ultimately, *Lamps Plus* held that the FAA "requires more than ambiguity to ensure that the parties actually agreed to arbitrate on a classwide basis." (*Lamps Plus*, *supra*, 139 S.Ct. at p. 1415.) It observed that the consent of the parties is of central importance. The majority opinion explains, " '[T]he first principle that underscores all of our arbitration decisions' is that '[a]rbitration is strictly a matter of consent.' " (*Ibid.*,

12

quoting *Granite Rock Co. v. Int'l Brotherhood of Teamsters* (2010) 561 U.S. 287, 299.) "Whatever they settle on, the task for courts and arbitrators at bottom remains the same: 'to give effect to the intent of the parties.' " (*Lamps Plus*, at p. 1416, quoting *Stolt-Nielsen*, *supra*, 559 U.S. at p. 684.)

*Lamps Plus* then described the " 'crucial differences' " between individual and class arbitration, namely that class arbitration lacks the same benefits related to costs, efficiency, and speed. (*Lamps Plus*, *supra*, 139 S.Ct. at p. 1416, quoting *Stolt-Nielsen*, *supra*, 559 U.S. at p. 687.) *Lamps Plus* decided: "Like silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to 'sacrifice[ ] the principal advantage of arbitration.' " (*Lamps Plus*, at p. 1416, quoting *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 348 (*Concepcion*).)

In reaching this decision, *Lamps Plus* criticized the use of "California's rule that ambiguity in a contract should be construed against the drafter, a doctrine known as *contra proferentem*. The rule applies 'only as a last resort' when the meaning of a provision remains ambiguous after exhausting the ordinary methods of interpretation." (*Lamps Plus*, *supra*, 139 S.Ct. at p. 1417.) "At that point, *contra proferentem* resolves the ambiguity against the drafter based on public policy factors, primarily equitable considerations about the parties' relative bargaining strength." (*Ibid.*) *Lamps Plus* explained that it was inappropriate to use "state contract principles" that do " 'not help to determine the meaning the two parties gave to the words, or even the meaning that a reasonable person would have given to the language used,' " to mandate class arbitration. (*Id.* at p. 1418.) "Such an approach is flatly inconsistent with 'the foundational FAA principle that arbitration is a matter of consent.' " (*Ibid.*, quoting *Stolt-Nielsen*, *supra*, 559 U.S. at p. 684.)

13

The *Lamps Plus* decision does not suggest that the United States Supreme Court was overruling cases like *Securitas*, which was cited by Westmoreland in support of its earlier writ petition and by the court in its alternative writ. Instead, *Lamps Plus* teaches that the "general *contra proferentem* rule cannot be applied to impose class arbitration in the absence of the parties' consent." (*Lamps Plus*, *supra*, 139 S.Ct. at p. 1418.)

The *Securitas* decision, however, was different. There, the court had evidence of the parties' consent in the unambiguous language of the poison pill provision in the arbitration agreement there. (*Securitas*, *supra*, 234 Cal.App.4th at p. 1126.) While it viewed the construction of this poison pill provision as "clear," the court in *Securitas* explained, "to the extent the dispute resolution agreement's language is uncertain on the point and one can glean a different outcome from the language, our conclusion would nevertheless stand under the principle that 'a court should construe ambiguous language against the interest of the party that drafted it.' " (*Ibid.*) In other words, the use of *contra proferentem* in *Securitas* was dicta—an alternative rationale for a decision the court made based on the "clear" construction of the arbitration agreement in that case.

### C. Application of *Lamps Plus*

We join other California courts in following *Lamps Plus*. (See *Tesla*, *supra*, 87 Cal.App.5th at p. 218, fn. 5 [explaining *Lamps Plus* requires a rule regarding construction of ambiguities in arbitration agreement "that we follow"].) Specifically, we seek to give effect to the intent of the parties expressed in the language and structure of the Kindercare arbitration agreement itself. (*Lamps Plus*, *supra*, 139 S.Ct. at p. 1415, citing *Stolt-Nielsen*, *supra*, 559 U.S. at p. 684.)

14

We see nothing in the Kindercare arbitration agreement that would require us to apply *contra proferentem* or any other "default rule based on public policy considerations" that is divorced from the intent of the parties. (See *Lamps Plus*, *supra*, 139 S.Ct. at p. 1417.) We instead rely on the parties' intent, expressed through the language and structure of the agreement. Here, the "Savings Clause & Conformity Clause" states that the arbitration agreement is "invalid" if the "Waiver of Class and Collective Claims" is "found to be unenforceable." This is an unambiguous expression of the parties' intent to avoid parallel litigation before an arbitrator and before a court.

Westmoreland's operative complaint includes four analytically distinct claims: (1) Westmoreland's individual claims under Labor Code sections 201 through 203 (and perhaps sections 212 and 213, though the first amended complaint articulates those potential violations only in its recitation of the elements of a putative class action and not in the cause of action itself); (2) Westmoreland's class claims under Labor Code sections 201 through 203 (and perhaps sections 212 and 213); (3) Westmoreland's "individual" claim under PAGA, addressing her own injury; and (4) Westmoreland's "representative" claims under PAGA, addressing injuries to other aggrieved employees. In the absence of the poison pill provision, Kindercare could have compelled arbitration of Westmoreland's non-PAGA claims on behalf of herself alone, as we describe below in connection with our discussion of the recent *Viking River* decision. Kindercare could also have compelled Westmoreland to waive class claims against it, under the rule described in *Concepcion*. The dilemma for Kindercare, however, is that the provision in the "Waiver of Class and Collective Claims" also bars Westmoreland from arbitrating or litigating in court the fourth category of claims described above. That puts the waiver clause "in conflict with a mandatory provision of

applicable law," as described in part III.D, *post*. The agreement's poison pill provision prevents this outcome because it provides that, in this scenario, the "agreement is invalid and any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims."

In its order on the original motion to compel, the trial court had found the waiver provision was ambiguous. Specifically, it believed the poison pill did not specify "whether the *entire* waiver or *any portion* of the waiver must be deemed unenforceable to render" the agreement invalid. The trial court reasoned that the poison pill provision in *Securitas* was more certain because it had included language saying that it " 'shall not be severable from this [a]greement . . . .' " (*Securitas*, *supra*, 234 Cal.App.4th at p. 1125.)

We disagree and depart from the trial court's reasoning on the question of ambiguity in the waiver provision of the agreement. This court did not discuss the trial court's finding of ambiguity in the alternative writ. The alternative writ simply cited *Securitas* and noted that the "acknowledged ambiguity"—found by the trial court and acknowledged by Kindercare, but disputed by Westmoreland—could be addressed by construing the agreement against Kindercare as the drafter.

We conclude that the trial court identified an ambiguity that did not exist. When the parties signed the Kindercare arbitration agreement in 2016, it is difficult to imagine under what circumstances the "entire waiver" could possibly be found unenforceable. By 2011, approximately five years before Westmoreland joined Kindercare, *Concepcion* had already overruled the old California rule in *Discover Bank*, confirming that waivers of class action claims were enforceable and not unconscionable. (*Concepcion*, *supra*, 563 U.S. at p. 352; see also *DIRECTV, Inc v. Imburgia* (2015) 577 U.S. 47,

16

58–59.)  California courts were following the rule and enforcing such waivers. (See, e.g., *Phillips*, *supra*, 209 Cal.App.4th at p. 769.)  By 2016, the most significant open question concerning the enforceability of a "waiver of representative claims" concerned *claims under PAGA*—particularly the viability of California's rule set out in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 383 (*Iskanian*), that PAGA claims could not be subject to mandatory arbitration and could not be waived.

The poison pill provision in the "Savings Clause & Conformity Clause" of Kindercare's arbitration agreement was therefore unambiguous.  So long as the waiver of PAGA claims is unenforceable, then the agreement "is invalid and any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims."  Dueling presumptions regarding construction of arbitration agreements—the principle of *contra proferentem*, discussed in dicta in *Securitas*, versus the presumption that parties would favor binding rather than non-binding arbitration, as in *Lamps Plus*—need not and do not come into play here.

### D.  *Viking River*

While the parties were briefing this appeal, the United States Supreme Court resolved the open question of whether a PAGA claim can be waived. Under *Iskanian*, *supra*, 59 Cal.4th at page 383, "an employee's right to bring a PAGA action is unwaivable."  *Viking River* held, "the FAA did *not* preempt *Iskanian* to the extent the decision prohibited waiver of an employee's right to pursue a 'representative' PAGA claim on behalf of the state.  [Citation.] [Citation.]  That is because 'the FAA does not require courts to enforce contractual waivers of substantive rights and remedies.' "  (*Tesla*, *supra*, 87 Cal.App.5th at p. 234.)  "On the other hand, *Viking River* held *Iskanian* was

17

preempted to the extent it 'invalidates agreements to arbitrate only "individual PAGA claims for Labor Code violations that an employee suffered." ' " (*Ibid.*, quoting *Viking River*, *supra*, 142 S.Ct. at p. 1923.) It further held, " 'the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate.' " (*Tesla*, at p. 235, quoting *Viking River*, at p. 1924, and citing *Lewis v. Simplified Labor Staffing Solutions, Inc.* (2022) 85 Cal.App.5th 983, 993–996.)

In *Viking River*, the arbitration agreement included a " 'severability clause' specifying that 'any "portion" of the waiver that remained valid would be "enforced in arbitration." ' [Citation.] The court relied on that clause in concluding the defendant was entitled to compel arbitration of the plaintiff's individual claim, even though the arbitration agreement was invalid as to the representative claim." (*Tesla*, *supra*, 87 Cal.App.5th at p. 235, quoting *Viking River*, *supra*, 142 S.Ct. at p. 1925.)

Had Kindercare simply included a waiver of representative claims in its arbitration agreement, and not included the poison pill at the end of the agreement, the result here could have been substantially similar to that in *Viking River*. The case also would have been similar to other recent appellate decisions following *Viking River*, including *Tesla*, *Piplack*, and *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639. The arbitration agreements in those cases did not have a poison pill provision like the one in Kindercare's agreement here, and so PAGA claims could be divided: the "individual" PAGA claim sent to arbitration and the "representative" PAGA claim pursued in court. (*Tesla*, *supra*, 87 Cal.App.5th at pp. 225–226; *Piplack*, *supra*, 88 Cal.App.5th at p. 1293; *Galarsa*, at pp. 654–655.)

18

Ironically, the language and structure of Kindercare's arbitration agreement necessitates a result similar to the "claim joinder" rule in PAGA that *Viking River* deemed problematic when imposed by state law. (*Viking River, supra*, 142 S.Ct. at pp. 1923–1924.) The poison pill effectively prevents us from sending Westmoreland's "individual" claims under PAGA (representing the State of California but pursuing "individual" remedies based on the plaintiff's status as a former employee) to arbitration, while allowing litigation in court of her "representative" claims under PAGA, which involve the rights of other "aggrieved employees." (See Lab. Code, § 2699, subds. (a), (c).)

The arbitration agreement in this case sought to address the uncertainty in the law in 2016 concerning the waiver of representative claims under PAGA by using the poison pill provision to prevent litigation on parallel tracks if it ever became clear that even one of Westmoreland's potential class or representative claims could not be waived and would have to be pursued in court. The provision is unambiguous and "presents an all-or-nothing proposition." (*Securitas, supra*, 234 Cal.App.4th at p. 1126.) The provision leaves no room for Kindercare to choose to bifurcate Westmoreland's claims between arbitration and court; it instead invalidates the agreement.

In sum, having exercised our discretion to hear Kindercare's appeal as a writ of mandate, we conclude that the arbitration agreement is invalid by operation of the unambiguous "Savings Clause and Conformity Clause." As a consequence of Kindercare's drafting decisions, and absent further stipulation between the parties, the arbitration agreement is "invalid" and so Kindercare must litigate all of Westmoreland's claims in court.

## DISPOSITION

The October 27, 2021 order denying Kindercare's renewed motion to compel arbitration is affirmed. Westmoreland is entitled to her costs on appeal.

_____

Markman, J.*

We concur:

_____

Stewart, P.J.

_____

Richman, J.

*Westmoreland v. Kindercare Education LLC* (A164090)

* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21

Trial Court:                                      San Francisco County Superior Court

Trial Judge:                                      Hon. Andrew Y.S. Cheng


Attorneys for Appellant:                          Sheppard, Mullin, Richter & Hampton
                                                  Thomas R. Kaufman
                                                  Paul Berkowitz

Attorneys for Respondent:                         Diversity Law Group, P.C.
                                                  Larry W. Lee
                                                  Mai Tulyathan

                                                  Polaris Law Group
                                                  William L. Marder